NO DISCLOSURE STATEMENT HAS BEEN FILED. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THIS PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                          :
In re                                     :
                                          :  Chapter 11  Case No.
Cornerstone Propane, L.P., et al.,        :  04- 13856 (      )
                                          :
                    Debtors.              :  Jointly Administered
                                          :
———————————————————————— x

DEBTORS' JOINT PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Matthew A. Cantor (MC-7727)
Jonathan S. Henes (JH-1979)
Michael A. Cohen (MC-1277)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Attorneys for the Debtors and Debtors in Possession

Dated:  June 3, 2004

**TABLE OF CONTENTS**

Page

**ARTICLE I. DEFINITIONS AND INTERPRETATION**..................................................................... 1
    1.1      Definitions....................................................................................................................1
    1.2      Interpretation; Application of Definitions and Rules of Construction....................11
    1.3      Plan Schedules, Plan Supplement, and Plan Documents .......................................11

**ARTICLE II. DESCRIPTION OF SECURITIES TO BE ISSUED UNDER THE PLAN** ................................11
    2.1      New Cornerstone Term Loan B Bank Debt .............................................................11
    2.2      New General Partnership Units ................................................................................11
    2.3      New HLP Units ..........................................................................................................11
    2.4      Exit Facility................................................................................................................12

**ARTICLE III. SUMMARY AND TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS**
**AND PRIORITY TAX CLAIMS** ...............................................................................................13
    3.1      No Classification of Administrative Claims and Priority Tax Claims ..................13
    3.2      Treatment of Administrative Expense Claims ........................................................13
    3.3      Treatment of Priority Tax Claims ............................................................................14
    3.4      NorthWestern Claims ................................................................................................14

**ARTICLE IV. CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS AND VOTING**
**RIGHTS** ...........................................................................................................................14
    4.1      Summary ....................................................................................................................14
    4.2      Class 1 — Unsecured Priority Non-Tax Claims .....................................................15
    4.3      Class 2 — Convenience Claims ...............................................................................15
    4.4      Class 3 — Secured OLP Claims ..............................................................................16
    4.5      Class 4 — Secured Seller Note Claims ...................................................................16
    4.6      Class 5 — Miscellaneous Secured Claims ..............................................................16
    4.7      Class 6 —OLP Unsecured Claims ...........................................................................17
    4.8      Class 7 — MLP Unsecured Claims .........................................................................17
    4.9      Class 8 — Operating Subsidiary Unsecured Claims ..............................................17
    4.10    Class 9 — MLP Partnership Interests ......................................................................17
    4.11    Class 10 — OLP Partnership Interests .....................................................................17
    4.12    Class 11 — Operating Subsidiary Interests..............................................................18
    4.13    Class 12 Securities Litigation Claims ......................................................................18
    4.14    Class 13 — SYN Loan Claims .................................................................................18
    4.15    Special Provision Governing Unimpaired Claims ..................................................18

**ARTICLE V. ACCEPTANCE OR REJECTION OF THE PLAN** ........................................................19
    5.1      Voting of Claims and Partnership Interests..............................................................19
    5.2      Procedural Consolidation..........................................................................................19
    5.3      Elimination of Vacant Classes..................................................................................19
    5.4      Nonconsensual Confirmation....................................................................................19
    5.5      Impairment Controversies.........................................................................................19
    5.6      Acceptance by Impaired Classes..............................................................................19

**ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN** ...................................................19
    6.1      Continued Partnership Existence and Vesting of Assets in the Reorganized Debtors ......19
    6.2      Restructuring Transactions........................................................................................20
    6.3      Cancellation of Existing Securities and Agreements...............................................20
    6.4      Issuance of New Securities; Execution of Plan Documents...................................20
    6.5      Effectuating Documents and Further Transactions..................................................20
    6.6      Corporate Governance, Directors and Officers, and Partnership Action ..............20
    6.7      Exit Facility................................................................................................................21

|  |  |  |
|---|---|---|
| 6.8 | Issuance of New GP Membership Interests | 21 |
| 6.9 | Cancellation of OLP Partnership Interests; Reorganized OLP | 21 |
| 6.10 | Sources of Cash for Plan Distribution | 22 |
| 6.11 | Additional Entities | 22 |
| 6.12 | Transfer of Assets of the MLP to New HLP | 22 |

**ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................**22**

| 7.1 | Assumption, Assignment or Rejection of Executory Contracts and Unexpired Leases | 22 |
|---|---|---|

**ARTICLE VIII. PROVIS IONS GOVERNING DISTRIBUTIONS** ...........................................................**23**

| 8.1 | Distributions for Claims and Interests Allowed as of the Effective Dates Allocation | 23 |
|---|---|---|
| 8.2 | Method of Distributions Under the Plan | 24 |
| 8.3 | Compliance with Tax Requirements | 24 |
| 8.4 | Setoffs and Recoupments | 24 |
| 8.5 | Fractional Distributions of New HLP Units | 25 |

**ARTICLE IX. PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS** .............................................................................**25**

| 9.1 | Resolution of Disputed Claims | 25 |
|---|---|---|
| 9.2 | Allowance of Claims and Interests | 26 |

**ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE AND CONSUMMATION OF THE PLAN** ....................................................................................................**26**

| 10.1 | Conditions Precedent to the Effective Date | 26 |
|---|---|---|
| 10.2 | Waiver of Conditions | 27 |
| 10.3 | Effect of Non-occurrence of Conditions to Consummation | 28 |

**ARTICLE XI. EFFECT OF PLAN CONFIRMATION** .............................................................................**28**

| 11.1 | Binding Effect | 28 |
|---|---|---|
| 11.2 | Subordination | 28 |
| 11.3 | Releases by the Debtors | 28 |
| 11.4 | Releases by Holders of Claims and Interests | 29 |
| 11.5 | Exculpation and Limitation of Liability | 29 |
| 11.6 | Survival of Indemnification Obligations | 29 |
| 11.7 | Discharge of Claims and Termination of Interests | 29 |
| 11.8 | Term of Bankruptcy Injunction or Stays | 30 |
| 11.9 | Injunction | 30 |
| 11.10 | No Release, Discharge, Injunction as to NorthWestern | 30 |

**ARTICLE XII. RETENTION OF JURISDICTION** ...................................................................................**30**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** ................................................................................**31**

| 13.1 | Effectuating Documents, Further Transactions and Partnership Actions | 31 |
|---|---|---|
| 13.2 | [Dissolution of Creditors Committee | 32 |
| 13.3 | Payment of Statutory Fees | 32 |
| 13.4 | Modification of Plan | 32 |
| 13.5 | Revocation of Plan | 32 |
| 13.6 | Successors and Assigns | 32 |
| 13.7 | Reservation of Rights | 32 |
| 13.8 | Section 1145 Exemption | 32 |
| 13.9 | Section 1146 Exemption | 32 |
| 13.10 | Inconsistency | 32 |
| 13.11 | Governing Law | 33 |
| 13.12 | Further Assurances | 33 |
| 13.13 | Injunction Related to Releases and Exculpation | 33 |
| 13.14 | Service of Documents | 33 |

13.15    Filing of Additional Documents ................................................................................................33

13.16    Plan Supplement ....................................................................................................................33

Cornerstone Propane Partners, L.P., together with Cornerstone Propane, L.P., Cornerstone Holding Corp., Flame, Inc., Propane Continental, LLC, Coast Energy Global Services, LLC and Coast Energy Canada, LLC, as debtors and debtors in possession, jointly propose the following chapter 11 plan pursuant to section 1121(a) of title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE III.

## DEFINITIONS AND INTERPRETATION

**3.1** **Definitions**.  For purposes of this Plan, except as expressly provided or unless the context requires, the terms specified below shall have the following meanings:

(1)       "Administrative Claim" means a Claim for costs and expenses of administration under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(b) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 and 503(b) of the Bankruptcy Code or otherwise to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

(2)       "Adequate Protection Claims" means any and all claims of the Secured Parties (as defined in the Cash Collateral Order) arising under the Cash Collateral Order, including reimbursement of fees and expenses incurred by the professionals of the OLP Notes Committee.

(3)       "Allowed Claim" means an Allowed Claim in the particular Class described.

(4)       "Allowed Interest" means an Allowed Partnership Interest or Allowed Interest, as applicable, in the particular Class described.

(5)       "Allowed" means, with respect to any Claim or Partnership Interest, except as otherwise provided herein:  (a) a Claim or Partnership Interest that has been scheduled by any Debtor in its schedule of liabilities as other than disputed, contingent or unliquidated and as to which a Debtor or any other party in interest has not Filed an objection or a motion to estimate by the Claims Objection Deadline; (b) a Claim or Partnership Interest that either (i) is not a Disputed Claim or a Disputed Partnership Interest and as to which neither a Debtor nor any other party in interest has Filed an objection or a motion to estimate by the Claims Objection Deadline, or (ii) has been allowed by a Final Order; (c) a Claim or Partnership Interest that is allowed (i) in any stipulation of amount and nature of Claim or Partnership Interest executed prior to the Confirmation Date and approved by the Bankruptcy Court by a Final Order; (ii) in any stipulation with any Debtor of amount and nature of Claim or Partnership Interest executed on or after the Confirmation Date; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim arising from the rejection of an executory contract or unexpired lease that either (i) is not a Disputed Claim and as to which neither a Debtor nor any other party in interest has Filed an objection or a motion to estimate by the Claims Objection Deadline or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; or (e) a Claim or Partnership Interest that is specifically allowed pursuant to this Plan.

(6)       "Avoidance Action Recovery Proceeds" means amounts recovered pursuant to the prosecution and resolution of Avoidance Actions by the Debtors exclusive of any costs, fees and expenses incurred by the Debtors in the prosecution and resolution of Avoidance Actions.

(7)       "Avoidance Actions" means all claims, excluding the NorthWestern Claims, rights, and causes of action belonging to the Debtors' Estate whether at law, in equity, or otherwise arising under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

(8)　　　"Ballots" mean the ballot forms distributed to each Holder of an Impaired Claim on which the Holder is to indicate, among other things, acceptance or rejection of the Plan.

(9)　　　"Bankruptcy Code" means title 11 of the United States Code, as amended from time to time.

(10)　　"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases and, to the extent of any withdrawal of the reference under section 157 of title 28 of the United States Code, such District Court that has competent jurisdiction over the Chapter 11 Case.

(11)　　"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or the proceedings therein.

(12)　　"Bar Date" means [_____], the date designated by the Bankruptcy Court as the last date for filing proofs of Claims or Interest against the Debtors.

(13)　　"bps" means 0.01%.

(14)　　"Business Day" means any day, other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

(15)　　"Cash" means legal tender of the United States of America and equivalents thereof.

(16)　　"Cash Collateral Order" means that certain final order entered by the Bankruptcy Court on June __, 2004 authorizing the Debtors' use of cash collateral.

(17)　　"Causes of Action" means all rights, claims, causes of action, defenses, debts, demands, damages, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including, without limitation, Avoidance Actions or actions arising under similar state statutes.

(18)　　"CEC" means Coast Energy Canada, LLC, a Delaware limited liability company.

(19)　　"CEGS" means Coast Energy Global Services LLC, a Delaware limited liability company.

(20)　　"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors currently pending before the Bankruptcy Court.

(21)　　"CHC" means Cornerstone Holding Corp., a Delaware corporation.

(22)　　"Claim Holder" or "Claimant" means the Holder of a Claim.

(23)　　"Claim" means a claim as defined in section 101(5) of the Bankruptcy Code against a Debtor.

(24)　　"Claims Objection Deadline" means, for each Claim, unless otherwise extended by the Bankruptcy Court, 90 days after the later of (a) the Effective Date; or (b) if such proof of Claim is timely filed after the Effective Date, 60 days after the date a proof of claim for such Claim is filed with the Bankruptcy Court.

(25)　　"Class" means a category of Holders of Claims or Partnership Interests as set forth in Article IV herein.

(26)　　"Commencement Date" means June 3, 2004, the date on which the Debtors commenced the Chapter 11 Cases.

(27)　"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

(28)　"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(29)　"Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article X herein having been (i) satisfied or (ii) waived pursuant to Article X herein.

(30)　"Consummation" means the occurrence of the Effective Date.

(31)　"Convenience Claims" means Claims of the type described in Section 3.4 herein.

(32)　"Cornerstone Entities" means the Debtors and all of their direct and indirect subsidiaries and affiliates.

(33)　"Cornerstone GP" means Cornerstone Propane GP, Inc., a California corporation and the managing general partner of the MLP.

(34)　"Creditor" means any Holder of a Claim.

(35)　["Creditors Committee" means the official statutory committee of unsecured creditors appointed by the United States Trustee on [_____], 2004 pursuant to Section 1102 of the Bankruptcy Code.]

(36)　"D&O" Policies means the insurance policies set forth on Exhibit [__] attached hereto.

(37)　"Debtors in Possession" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases.

(38)　"Debtors" means Cornerstone Propane Partners, L.P., together with Cornerstone Propane, L.P., Cornerstone Holding Corp., Flame, Inc., Propane Continental, LLC, Coast Energy Global Services, LLC and Coast Energy Canada, LLC.

(39)　"Deductible" means with respect to the D&O Policies, the amount per Claim (as defined in the D&O Policies) that the party afforded coverage under the D&O Policy is required to pay before the right to endorsement under the D&O Policy arises.

(40)　"Deductible Obligations" means the obligation of the Debtors and Reorganized Debtors to indemnify, reimburse or otherwise compensate their present directors, officers, agents employees and representatives for the amount of any Deductible paid by such present or former director, officer, agent employee or representative.

(41)　"Disbursing Agent" means the Reorganized Debtors or any party designated by the Reorganized Debtors to serve as Disbursing Agent under the Plan.

(42)　"Disclosure Statement Hearing Date" means the date(s) on which the Bankruptcy Court considers approval of the Disclosure Statement.

(43)　"Disclosure Statement Order" means that certain order of the Bankruptcy Court, dated [_____], 2004, approving the Disclosure Statement under section 1125 of the Bankruptcy Code which is annexed to the Disclosure Statement as Exhibit [____].

(44)　"Disclosure Statement" means the Disclosure Statement for the Plan, as amended, supplemented, or modified from time to time, describing the Plan, that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3018.

-3-

(45)     "Disputed Claim Amount" means with respect to any Disputed Claim, the total amount set forth in a timely Filed proof of claim in respect of such Claim or, if no such amount is set forth therein or such Claim is filed as contingent or unliquidated, the amount agreed to by the Debtors or the amount estimated by the Bankruptcy Court in accordance with section 502(c) of the Bankruptcy Code.

(46)     "Disputed Claims Reserve" means the reserve established and maintained by the Reorganized Debtors on account of Disputed Claims.

(47)     "Disputed" means, with respect to any Claim or Partnership Interest, any Claim or Partnership Interest:  (a) listed on the Schedules as, or proof of which is filed as, unliquidated, disputed or contingent; (b) as to which a proof of claim designating such Claim as liquidated in amount and not contingent was not timely and properly filed; (c) as to which a Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (d) is otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

(48)     "E&S" means Everett & Solsvig, Inc., collectively with its officers, agents employees and representatives, its subsidiaries, affiliates, and all of their respective officers, agents employees and representatives.

(49)     "E&S Agreements" means that certain Indemnification Agreement by and among Everett & Solsvig, Inc., Cornerstone Propane GP, Inc. and NorthWestern Corporation dated as of June 27, 2002 together with that certain Services Agreement by and among the Cornerstone Entities, Curtis G. Solsvig III, Robert S. Everett, and CSolsvig LLC,  dated as of [___], 2004.

(50)     "E&S Indemnifications" means collectively any obligations of the Debtors to indemnify E&S, its officers, agents employees and representatives pursuant to their respective present or past partnership agreements, certificates of incorporation, by-laws, contractual obligations including but not limited to the E&S Agreements, or any applicable laws in respect of all past, present and future actions, suits and proceedings against any of E&S, its directors, officers, agents, employees and representatives based upon any act or omission related to service with, for, or on behalf of the Debtors; provided, however, that the indemnification of such parties shall not extend to any claim or expense resulting from bad faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct.

(51)     "Effective Date" means a Business Day selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article X herein have been (i) satisfied or (ii) waived pursuant to Article X.

(52)     "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

(53)     "Estates" means the estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(54)     "Exit Facility" means the Reorganized Debtors' working capital facility, more fully described in Section 2.4 herein.

(55)     Exit Facility Agreement" means the revolving credit facility agreement governing the terms of the Exit Facility to be entered into by the Exit Facility lender, the New HLP and the Reorganized OLP on the Effective Date and which shall be included as part of the Plan Supplement.

(56)     "File" or "Filed" means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

(57)     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, vacated, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed

-4-

has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(58)     "Flame" means Flame, Inc., an Arizona corporation.

(59)     "General Unsecured Claims" means any unsecured Claim against a Debtor that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim and is not included in any other Class.

(60)     "Holder" and collectively, "Holders" mean a Person or Entity holding a Partnership Interest or Claim.

(61)     "Impaired Claim" means a Claim classified in an Impaired Class.

(62)     "Impaired" means any Claims, Class of Claims, Partnership Interests, or interests impaired within the meaning of section 1124 of the Bankruptcy Code.

(63)     "Incentive Distribution Rights" means the right to receive an increasing percentage of quarterly distributions of available Cash from operating surplus after the Minimum Quarterly Distribution and the target distribution levels set forth in the New HLP Limited Partnership Agreement and described in section 2.3(d) hereof have been achieved, which Incentive Distribution Rights shall be in addition to the New GP's 2% economic interest in the New HLP represented by the New GP Interest.

(64)     "Intercompany Claim" means a Claim of one Debtor against another Debtor.

(65)     "Interest" means any equity interest in the Operating Subsidiaries including, but not limited to, all issued, unissued, authorized or outstanding shares of common stock or membership interests together with any warrants, options or contract rights to purchase or acquire such interests at any time.

(66)     "LIBOR" means London Interbank Offer Rate.

(67)     "Make Whole" means any amount due and owing to the Holders of OLP Note Claims pursuant to the Make Whole provisions of the note purchase agreements governing the 8.08% Senior Secured Notes due July 31, 2005, the 8.27% Senior Secured Notes due July 31, 2009, the 7.53% Senior Secured Notes due December 31, 2010, the 7.33% Senior Secured Notes due January 31, 2013, the Forbearance and Amended Agreement dated July 2, 2003, the First Extension of Forbearance, and the Amended Agreement, Amendment to Note Agreements and Consent dated October 31, 2003.

(68)     "Management Incentive Plan" means the plan described in Section **[7.7(d)(ii)]** herein.

(69)     "Master Ballots" means the ballots distributed to nominees or Holders of record of the OLP and MLP Notes to record the votes, if any, of the beneficial Holders of such instruments.

(70)     "Minimum Quarterly Distribution" or "MQD" means with respect to the New HLP Units and the New GP Interest the distribution of $0.50 per quarter or $2.00 on an annual basis, made to holders of record on the applicable MQD Record Date, with 98% of each such distribution to be made to the New HLP Units (subject to the subordination provisions of the New HLP Subordinated Units) and 2% of each such distribution to be made to the holder of the New GP interest.

(71)     "Miscellaneous Secured Claims" means all Secured Claims against a Debtor other than Secured OLP Claims and Secured Seller Note Claims including Secured Seller Note Claims.

(72)     "MLP" means Cornerstone Propane Partners, L.P., a Delaware limited partnership.

(73)     "MLP Common Units" means any and all of the issued and outstanding common units of the MLP, including, without limitation, any warrants, options or contract rights to purchase or acquire any MLP Common Units.

(74)     "MLP GP Interests" means any and all general partner interests issued and outstanding by the MLP, including, without limitation, any warrants, options or contract rights to purchase or acquire any MLP GP Interests.

(75)     "MLP Notes" means the 10.26% Senior Unsecured Notes due June 30, 2009 issued by MLP.

(76)     "MLP Partnership Interests" means any and all Partnership Interests in the MLP, including, without limitation, the MLP GP Interests, the MLP Common Units, the MLP Subordinated Units and any warrants, options or contract rights to purchase or acquire any MLP Partnership Interests.

(77)     "MLP Securities Litigation Claim" means a Securities Litigation Claim against the MLP.

(78)     "MLP Subordinated Units" means any and all of the issued and outstanding subordinated units of the MLP, including, without limitation, any warrants, options or contract rights to purchase or acquire any MLP Subordinated Units.

(79)     "MLP Unsecured Claims" means collectively, MLP Note Claims and any other Unsecured Claim against MLP not included in any other Class (including, without limitation, pre-petition payables, secured creditor deficiency claims, and trade claims).

(80)     "MQD Record Date" means approximately forty five (45) days after the end of the first fiscal quarter ending after the Effective Date, and then approximately forty five (45) days after the end of each subsequent fiscal quarter.

(81)     "New By-laws" means, with reference to a Reorganized Operating Subsidiary, the By-laws of such Reorganized Operating Subsidiary, as restated, amended or newly created as described in Section 6.6(a) herein copies of which New By-Laws shall be included as part of the Plan Supplement.

(82)     "New Common Units" means 7.1 million New Common Units of the New HLP to be issued to Holders of Allowed Claims in Class 3 on the Effective Date as more fully described in Article II herein.

(83)     "New Cornerstone Term Loan B Bank Debt" means that certain $125 million of new senior secured obligations of the Reorganized OLP, issued by the Reorganized OLP to the Holders of Allowed Claims in Class 3 pursuant to the New Term Loan B Agreement, which shall have the terms and conditions set forth in Section 2.1 herein.

(84)     "New GP" means a limited liability company to be created prior to the Effective Date to act as the general partner of the New HLP and own 100% of the general partner interests in the New HLP, which New GP will be governed by the New GP LLC Agreement.

(85)     "New GP Holders" means the following entities or their Nominees: Angelo, Gordon & Co., LP, Avenue Capital Group, Fortress Investment Group, and Satellite Asset Management, LP.

(86)     "New GP Holders Investment" means $5.2 million in Cash that the New GP Holders will collectively contribute to the New GP pursuant to the New GP Holders Investment Agreement in consideration of the issuance of the New GP Membership Interests to the New GP Holders, which $5.2 million will in turn be contributed by the New GP to the New HLP in exchange for the issuance of the New GP Interest to the New HLP on the Effective Date.

(87)     "New GP Holders Investment Agreement" means that Certain Agreement, to be entered into on or prior to the Effective Date by and between the Debtors and the New GP Holders a form of which shall be included in the Plan Supplement.

(88)     "New GP Interest" means 100% of the general partner interests of the New HLP, to be issued to the New GP in consideration of the contribution of the New GP Holders' Investment by the New GP to the New HLP, which interests shall represent an aggregate 2% economic interest in the New HLP and, in addition, the Incentive Distribution Rights.

(89)     "New GP LLC Agreement" means the limited liability company agreement to be entered into on or prior to the Effective Date by the New GP Holders, which agreement will govern the New GP the form of which shall be included in the Plan Supplement.

(90)     "New GP Membership Interests" means a limited liability company membership interest in the New GP.

(91)     "New HLP" means the limited partnership which will, from and after the Effective Date, hold all of the assets of the MLP, own 100% of the membership interests in and be the sole member of the Reorganized OLP.

(92)     "New HLP Limited Partnership Agreement" means that certain Agreement of Limited Partnership to be entered into on or prior to the Effective Date, the form of which shall be included as part of the Plan Supplement.

(93)     "New HLP Units" means the New Common Units and the New Subordinated Units.

(94)     "New Subordinated Units" means 7.1 million New Subordinated Units of HLP to be issued on the Effective Date as more fully described in Article II herein.

(95)     "New Term Loan B Agreement" means the term loan agreement relating to the New Cornerstone Term Loan B Bank Debt, the form of which shall be included as part of the Plan Supplement.

(96)     "Nominee" means any broker, dealer, commercial bank, trust company, savings and loan, financial institution or other nominee in whose name securities were registered or held of record on behalf of a beneficial Holder.

(97)     "Non-Tax Priority Claims" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

(98)     "NorthWestern" means NorthWestern Corporation and its direct and indirect subsidiaries, affiliates, current and former officers and directors.

(99)     "NorthWestern Claims" means any Claim or Interest of or filed on behalf of NorthWestern, including, without limitation, any Claims arising from the OLP Secured Credit Facility.

(100)     "OLP" means Cornerstone Propane, L.P., a Delaware limited partnership.

(101)     "OLP Collateral Trustee" means Bank of New York Trust Co. of Florida N.A. as trustee for the Holders of the OLP Notes and the OLP Secured Credit Facility under that certain Amended and Restated Security Agreement, dated as of July 2, 2003, and Second Amendment and Override to Intercreditor and Trust Agreement, dated as of July 2, 2003.

(102)     "OLP GP Interests" means any and all general partner interests in the OLP or warrants options or contract rights to purchase or acquire any OLP GP Interest.

(103)     "OLP LP Interests" means any and all limited partner interests in the OLP or warrants, options or contract rights to purchase or acquire any OLP LP Interest.

(104)     "OLP Note Claim" means a secured Claim against the OLP pursuant to the OLP Notes and the related OLP Note agreements and security documents, which Claims are Allowed in the amount of $499,894,067.

(105)     "OLP Notes" means collectively, the 7.53% Senior Secured Notes due December 31, 2010, 7.33% Senior Secured Notes due January 31, 2013, 8.08% Senior Secured Notes due July 31, 2005 and the 8.27% Senior Secured Notes due July 31, 2009 issued by the OLP pursuant to note purchase agreements which OLP Notes are secured obligations of the Debtors.

(106)     "OLP Notes Committee" means that certain *Ad Hoc* Committee of Holders of in excess of 90% of the aggregate outstanding principal amount of OLP Notes with whom the Debtors have agreed upon the terms of a consensual financial restructuring to be implemented pursuant to this Plan.

(107)     "OLP Partnership Interests" means all of the Partnership Interests in the OLP including, without limitation, the OLP GP Interests, the OLP LP Interests, and any warrants, options or contract rights to purchase or acquire any OLP Partnership Interest.

(108)     "OLP Secured Credit Facility Claim" means a Claim against OLP pursuant to the OLP Secured Credit Facility.

(109)     "OLP Secured Credit Facility" means all loans and other financial accommodations made pursuant to that certain NorthWestern Credit Agreement (as amended, modified or supplemented from time to time in accordance with the terms thereof) dated as of November 30, 2001, among the OLP, the financial institutions named therein, Credit Suisse First Boston, as Administrative Agent, and Credit Suisse First Boston, CIBC Inc. and Barclay's Capital as Co-Arrangers, together with any right that NorthWestern Corporation may assert pursuant to the Forbearance and Amendment Agreement dated July 2, 2003, between the OLP and NorthWestern Corporation.

(110)     "OLP Securities Litigation Claim" means a Securities Litigation Claim against the OLP.

(111)     "OLP Unsecured Claims" means any Unsecured Claim against OLP not included in any other Class.

(112)     "Operating Subsidiaries" means PC, Flame, CEC, CEGS and CHC.

(113)     "Operating Subsidiary Unsecured Claims" means any unsecured Claim against an Operating Subsidiary not included in any other Class.

(114)     "Partnership Interest" means any equity interest in the OLP or the MLP including, but not limited to, all issued, unissued, authorized or outstanding partnership interests or units together with any warrants, options or contract rights to purchase or acquire such interests at any time.

(115)     "PC" means Propane Continental, LLC, a Delaware limited liability company and a wholly-owned Subsidiary of CHC.

(116)     "Person" means a person as defined in section 101(41) of the Bankruptcy Code.

(117)     "Plan" means this plan pursuant to chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and Bankruptcy Rules and the Plan Support Agreement.

(118)     "Plan Documents" means the documents and the attachments, exhibits and schedules thereto, which aid in effectuating the Plan which shall be in form and substance satisfactory to the OLP Notes Committee.

(119)    "Plan Support Agreement" means the agreements entered into by Holders of an aggregate of ____% of the OLP Notes and the OLP, the MLP and the Operating Subsidiaries prior to the Effective Date, pursuant to which such Holders agreed to support this Plan, subject to the terms and conditions stated therein.

(120)    "Plan Supplement" means the compilation of documents and form of documents specified in the Plan to be filed as set forth in Section 13.6 of the Plan which shall be in form and substance satisfactory to the OLP Notes Committee and shall include the New GP LLC Agreement, the New HLP Limited Partnership Agreement, the Reorganized OLP Agreement, the New GP Holders Investment Agreement, the New Term Loan B Agreement, the Exit Facility Agreement, and the New By-Laws.

(121)    "Post Petition Interest" means interest accrued from and after the Commencement Date through the Effective Date.

(122)    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code entitled to priority in payment thereunder.

(123)    "Pro Rata" means, as the context dictates, either (i) the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed and Disputed Claims , in such Class or (ii) the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

(124)    "Professional" means a Person retained or to be compensated pursuant to sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.

(125)    "Professional Compensation and Reimbursement Claims" means all Administrative Claims for the compensation of Professionals and reimbursement of expenses incurred by such Professionals (to the extent allowed under sections 330 or 503 of the Bankruptcy Code) through the Effective Date.

(126)    "Record Date" means the date for determining, in the case of registered securities, which Holders of Claims and Partnership Interests are eligible to receive distributions hereunder, and shall be (i) the Business Day prior to the Effective Date for the Senior Notes and (ii) the Confirmation Date for all other Claims and Partnership Interests.

(127)    "Reorganized Debtors" means the Debtors, or their successors by merger, consolidation, or otherwise, pursuant to or in connection with the Restructuring Transactions, on and after the Effective Date.

(128)    "Reorganized OLP" means the OLP, (which shall be converted from a limited partnership to a limited liability company on the Effective Date) or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

(129)    "Reorganized OLP Agreement" means the limited liability company agreement of the Reorganized OLP to be entered into on the Effective Date, a copy of which shall be included as part of the Plan Supplement.

(130)    "Restructuring Transactions" means the mergers, consolidations, restructurings, transfers, conversions, dispositions, liquidations or dissolutions that the Debtors or Reorganized Debtors determine to be necessary or appropriate to effect a restructuring of their respective businesses or the overall organizational structure of the Reorganized Debtors, all of which shall be effected by the applicable documents included in the Plan Supplement.

(131)    "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and the statement of financial affairs as the Bankruptcy Court requires the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

(132) "Secured Claim" means (a) a Claim that is secured by a lien on property in which the Estates have an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order and not subject to avoidance, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

(133) "Secured OLP Claims" means the OLP Note Claims together with the OLP Secured Credit Facility Claims.

(134) "Secured Seller Notes" means those certain notes in the approximate aggregate amount of $7.04 million issued by PC and the OLP in connection with acquisitions by the OLP prior to the Commencement Date.

(135) "Secured Seller Note Claim" means a Claim against OLP pursuant to a Secured Seller Note.

(136) "Securities Act" means the Securities Act of 1933, 15 U.S.C. sections 77a-77aa, as now in effect or hereafter amended, or any similar federal, state or local law.

(137) "Securities Litigation Claims" means any Claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from recission of a purchase or sale of shares, notes, Partnership Interests, or any other security of the Debtors or an affiliate of any of the Debtors, for damages arising from the purchase or sale of any such security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of any such Claim, including claims based on allegations that the Debtors made false and misleading statements and engaged in other deceptive acts in connection with the sale of securities.

(138) "Subordination Period" means the date on which the Reorganized OLP meets the "Subordination Period Tests" more fully described in the New HLP Limited Partnership Agreement.

(139) "SYN" means SYN, Inc., a Delaware corporation.

(140) "SYN Loan Agreement" means that certain Fifth Amended and Restated Loan Agreement (as amended, modified or supplemented from time to time in accordance with the terms thereof) dated as of August 9, 2002 among Cornerstone Propane, L.P., as borrower, and SYN, as lender.

(141) "SYN Loan Claims" means a claim against the Debtors pursuant to the SYN Loan Agreement.

(142) "Tax Rate" means the rate equal to the underpayment rate specified in 26 U.S.C. §6621 (determined without regard to 26 U.S.C. §6621(c)) as of the Effective Date.

(143) "Tort Claims" means (i) all Claims against the Debtors arising from any accusation, allegation, notice, action, claim, demand or otherwise for personal injury, tangible or intangible property damage, products liability or discrimination, or based on employment, including punitive damages; and (ii) any Claim for indemnification or contribution (whether based on contract, statute or common law) against the Debtors by any third party, where such indemnification or contribution Claim of such third party is based on a Claim against such third party that if asserted directly against the Debtors would be a Claim included within the immediately preceding clause (i); provided, however, that Tort Claims shall not include (a) any Claims settled, liquidated or determined by a Final Order or a binding award, agreement or settlement prior to the Commencement Date for amounts payable by the Debtors for damages or other obligations in a fixed dollar amount payable in a lump sum by a series of payments; or (b) Securities Litigation Claims.

(144) "Unimpaired Claim" means a Claim classified in an Unimpaired Class.

(145) "Unimpaired Class" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

-10-

(146)  "Unsecured Priority Non-Tax Claims" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to a priority in right of payment under section 507(a) of the Bankruptcy Code, whether or not such Claim is listed on the Plan Schedules or evidenced by a filed Proof of Claim.

(147)  "Voting Deadline" means the date set by the Bankruptcy Court by which all Ballots for acceptance or rejection of the Plan must be received by the Debtors.

(148)  "Voting Record Date" means the record date set by the Bankruptcy Court, pursuant to Bankruptcy Rule 3017(d), for determining which Creditors are entitled to receive solicitation materials and, when applicable, to vote on the Plan.

**3.2  Interpretation; Application of Definitions and Rules of Construction**.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified herein, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**3.3  Plan Schedules, Plan Supplement, and Plan Documents**.  All Plan Schedules, Plan Documents and the Plan Supplement are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.

## ARTICLE II.

## DESCRIPTION OF SECURITIES TO BE ISSUED UNDER THE PLAN

The following securities will be distributed to the Holders of Allowed Claims (as set forth herein):

**2.1  New Cornerstone Term Loan B Bank Debt**.  The New Cornerstone Term Loan B Bank Debt shall (i) be senior secured obligations of the Reorganized OLP guaranteed by the New GP, the New HLP and all future direct and indirect subsidiaries of the New HLP in an initial principal amount of $125,000,000.00; (ii) accrue Cash interest at a rate of LIBOR plus **[450]** bps; (iii) mature on the fifth (5th) anniversary of the Effective Date; (iv) be amortized at a rate of 1.00% per annum payable quarterly in arrears with the balance due at maturity, and (v) be secured by a second lien on substantially all of the assets of each of the Reorganized Debtors, including, but not limited to, the accounts receivable inventory property, plant and equipment and stock of the subsidiaries of the New HLP.  A form of the New Cornerstone Term Loan B Agreement shall be contained in the Plan Supplement.

**2.2  New General Partnership Units**.  The New GP Interest shall be issued pursuant to the New HLP Limited Partnership Agreement and shall represent a two percent (2%) economic interest in the New HLP.  The New GP, as the holder of the New GP Interest, shall receive 2% of each Minimum Quarterly Distribution on a pari passu basis with the New Common Units and 2% of each Minimum Quarterly Distribution on a pari passu basis with the New Subordinated Units.  Distributions received by the New GP on account of the New GP Interest shall be distributed to the holders of the New GP Member Interests in accordance with the New GP LLC Agreement.

**2.3  New HLP Units**.  The New HLP Units shall consist of 7.1 million New Common Units and 7.1 million New Subordinated Units, and shall include the following terms, as more specifically described in the New HLP Limited Partnership Agreement and other applicable Plan Supplement Documents.  In the event of any conflict between the terms set forth below and the New HLP Limited Partnership or other applicable Plan Supplement

Document, the New HLP Limited Partnership Agreement and/or other applicable Plan Supplement Document shall govern.

(a) <u>New Common Units</u>. The New Common Units shall (i) receive a Minimum Quarterly Distribution of $0.50 per New Common Unit per quarter ($2.00 on an annual basis) (with 2% of such Minimum Quarterly Distribution to go to the New GP Interest on a pari passu basis), (ii) have limited voting rights with respect to the following matters, (x) approval of sale of substantially all of the assets of the New HLP, (y) approval of a new general partner of the New HLP, and (z) amendment of certain terms of the New Common Units, (iii) rank junior to all debt securities, and (iv) rank senior in right of distributions, liquidation rights and cash from capital transactions (and equal in all other respects) to the New Subordinated Units.

(b) <u>New Subordinated Units</u>. The New Subordinated Units shall (i) rank junior to all debt securities, (ii) rank junior in right of distributions, liquidation rights, and cash from capital transactions, (and equal in all other respects) to the New Common Units, (iii) receive a Minimum Quarterly Distribution of $0.50 per Common Unit per quarter ($2.00 on an annual basis) (with 2% of such Minimum Quarterly Distribution to go to the New GP Interest on a pari passu basis), provided that during the Subordination Period no Minimum Quarterly Distribution will be made to the New Subordinated Units until the New Common Units and New GP Interest have received their respective Minimum Quarterly Distributions described in Section 2.3(a) above and any arrearages owed from prior quarters. The New Subordinated Units will be subject to conversion to New Common Unit at the end of the Subordination Period as set forth in the New HLP Limited Partnership Agreement, including early conversion in certain circumstances.

(c) <u>Registration Rights</u>. Both the New Common Units and New Subordinated Units shall be granted registration rights to the extent determined by the New GP.

(d) <u>Incentive Distribution Rights</u>. The Incentive Distribution Rights shall be calculated as follows:

If, for any quarter, the Reorganized Debtors have distributed available Cash from operating surplus to the holders of New HLP Units and the New GP Interest in an amount equal to their respective shares of the Minimum Quarterly Distribution, including distributions of available Cash from operating surplus on outstanding New Common Units in an amount necessary to eliminate any cumulative arrearages in payment of the Minimum Quarterly Distribution; then the Reorganized Debtors will distribute any additional available Cash from operating surplus for that quarter among the holders of New HLP Units and the New GP Interest in the following manner:

(i) First, 98% to all holders of New Common Units and New Subordinated Units, pro rata, and 2% to the holder of the New GP Interest, until each holder of New Common Units and New Subordinated Units receives a total of $0.55 per unit for that quarter;

(ii) Second, 85% to all holders of New Common Units and New Subordinated Units, pro rata, and 15% to the holder of the New GP Interest, until each holder of New Common Units and New Subordinated Units receives a total of $0.625 per unit for that quarter;

(iii) Third, 75% to all holders of New Common Units and New Subordinated Units, pro rata, and 25% to the holder of the New GP Interest, until each holders of New Common Units and New Subordinated Units receives a total of $0.75 per unit for that quarter; and

(iv) Thereafter, 50% to all holders of New Common Units and New Subordinated Units, pro rata, and 50% to the holder of the New GP Interest.

**2.4 <u>Exit Facility</u>**. The Exit Facility shall be (i) in the form of a new $50 million secured revolving credit facility under which the Reorganized OLP will be the borrower and which will be governed by the Exit Facility Agreement; (ii) secured by a first lien on substantially all of the assets of the Reorganized Debtors, including, but not limited to, the accounts receivable, inventory, property, plant and equipment and stock of the subsidiaries of the

-12-

OLP and each of its direct and indirect subsidiaries; and (iii) guaranteed by the New GP, the New HLP and all existing and future direct and indirect subsidiaries of the New HLP.

## ARTICLE III.

## SUMMARY AND TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**3.1  No Classification of Administrative Claims and Priority Tax Claims**.  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  All such Claims shall be treated separately as unclassified Claims on the terms set forth herein.

**3.2  Treatment of Administrative Expense Claims**.

(a)  **Time for Filing Administrative Claims**.  Except with respect to (i) Professional Compensation and Reimbursement Claims, (ii) a liability incurred and paid in the ordinary course of business by a Debtor, (iii) an Administrative Claim that has been allowed on or before the Effective Date, or (iv) an Adequate Protection Claim, the Holder of an Administrative Claim must file with the Bankruptcy Court and serve notice of such Administrative Claim upon counsel to the Debtors, the Administrative Agent, and the Committee.  Such notice must include at a minimum (1) the name of the Holder, (2) the amount of the Claim, and (3) the basis of the Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

(b)  **Time for Filing Professional Compensation and Reimbursement Claims**.  Each Professional Person or other entity that holds or asserts an Administrative Claim that is a Professional Compensation and Reimbursement Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within sixty (60) days after the Confirmation Date, or such other date as may be fixed by the Bankruptcy Court.  The failure to file timely the Fee Application shall result in the Professional Compensation and Reimbursement Claims being forever barred and discharged.

(c)  **Allowance of Administrative Claims**.  An Administrative Claim with respect to which notice has been properly filed pursuant to Section 3.2(a) herein shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the deadline for filing and serving a notice of such Administrative Claim specified in Section 3.2(a) herein, or such later date as may be approved by the Bankruptcy Court on motion of a Debtor.  If an objection is filed within such thirty-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order or as agreed to by a Debtor.  An Administrative Claim that is a Professional Compensation and Reimbursement Claim, and with respect to which a Fee Application has been properly filed pursuant to Section 3.2(b) herein, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim as to which no notice need be filed as set forth in Section 3.2(a)(ii), (iii) or (iv) shall be an Allowed Administrative Claim on the Effective Date.  The Debtors shall pay the reasonable fees and expenses of the professionals (including, without limitation, attorneys, financial advisors, investment bankers, and expert witnesses) of the OLP Notes Committee as an Allowed Administrative Claim on the Effective Date and, as of the Effective Date, the Reorganized Debtors shall assume any and all obligations (including, without limitation, indemnification obligations) under the retention and engagement agreements entered into between Cornerstone and such professionals of the OLP Notes Committee.  The fees and expenses of such professionals shall be paid without setoff or deduction from the distributions to the members of the OLP Notes Committee under Class 3 of the Plan.

(d)  **Payment of Allowed Administrative Claims**.  Each Holder of an Allowed Administrative Claim shall receive (i) an amount equal to such Holder's Allowed Claim in one Cash payment on the Distribution Date, or (ii) such other treatment as may be agreed upon in writing by such Holder and a Debtor; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business of a Debtor may be paid at a Debtor's election in the ordinary course of business by such Debtor.  All Allowed Administrative Claims shall be paid by, and shall be the sole responsibility of, the Debtors.

     (e) **Extinguishment of Adequate Protection Claim**. Upon the occurrence of the Effective Date and the payment of the reasonable fees and expenses (including any indemnification payments due to such professionals as of the Effective Date) of the professionals of the OLP Notes Committee, the Adequate Protection Claim shall be extinguished in consideration for the treatment afforded herein and in the Cash Collateral Order.

    **3.3** **Treatment of Priority Tax Claims**. Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Holder's Allowed Priority Tax Claim, (a) the amount of such Holder's Allowed Priority Tax Claim, with simple interest at the rate of 6.00% per annum or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, in equal annual Cash payments, beginning on the Effective Date and continuing on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Claim (provided that Reorganized Debtors may prepay the balance of any such Allowed Priority Tax Claim at any time without penalty); (ii) a lesser amount in one Cash payment as may be agreed upon in writing by such Holder; or (iii) such other treatment as may be agreed upon in writing by such Holder and the Debtor. The Confirmation Order shall constitute and provide for an injunction by the Bankruptcy Court as of the Effective Date against any Holder of a Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer or director of a Debtor or Reorganized Debtors that otherwise would be liable to such Holder for payment of a Priority Tax Claim so long as Reorganized Debtors is not in default of its obligations with respect to such Claim under this Section.

    **3.4** **NorthWestern Claims**. The NorthWestern Claims shall be Disputed Claims, are subject to set off and no distributions shall be made on account of such Claims unless and until such NorthWestern Claims become Allowed Claims.

## ARTICLE IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS AND VOTING RIGHTS

    **4.1** **Summary**. The categories of Claims, Partnership Interests and Interests listed below classify Allowed Claims and Allowed Interests as applicable for each Debtor for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Except as otherwise provided in the Plan or the Confirmation Order or required by subsection 506(b) or section 1124 of the Bankruptcy Code, (a) Allowed Claims do not include interest or similar finance charges on such claims that accrue after the Commencement Date, and (b) any Post-Petition Interest that is payable in respect of a Priority Tax Claim shall be calculated at the applicable Tax Rate. The charts set forth below are only intended as a summary description of the treatment of the described Claims and Interests and the terms of the debt and securities to be issued under the Plan. Sections 4.2 through 4.15 of this Article IV of the Plan control to the extent of any inconsistency between the provisions thereof and the following summary. These Chapter 11 Cases have been consolidated for administrative and procedural purposes only. The Debtors are separate legal entities and are seeking to confirm their own Plan which is incorporated into this joint Plan. To the extent that a Class of Claims includes Claims against multiple Debtors, Claims against each individual Debtor shall be deemed a separate subclass for purposes of voting and distributions under the Plan. Moreover, Claimants may only look to the Debtor against whom a Claim arises for satisfaction of such Claim. In addition, Claimants' votes to accept or reject the Plan will be cast only in the Chapter 11 Cases of the Debtor against whom such Claims arise.

| CLASS | TYPE OF CLAIM/INTEREST | TREATMENT | VOTING RIGHTS |
|---|---|---|---|
| Class 1 | Unsecured Priority Non-Tax Claims | *Unimpaired.* | Not entitled to vote. Deemed to accept. |
| Class 2 | Convenience Claims | *Impaired.* | Entitled to vote. |
| Class 3 | Secured OLP Claims | *Impaired.* | Entitled to vote. |

| CLASS | TYPE OF CLAIM/INTEREST | TREATMENT | VOTING RIGHTS |
|-------|------------------------|-----------|---------------|
| Class 4 | Secured Seller Note Claims | *Unimpaired*. | Not entitled to vote. Deemed to accept. |
| Class 5 | Miscellaneous Secured Claims | *Unimpaired*. | Not entitled to vote. Deemed to accept. |
| Class 6 | OLP Unsecured Claims | *Impaired*. | Entitled to vote. |
| Class 7 | MLP Unsecured Claims | *Impaired*. | Entitled to vote. |
| Class 8 | Operating Subsidiary Unsecured Claims | *Impaired*. | Entitled to vote. |
| Class 9 | MLP Partnership Interests | *Impaired*. | Not entitled to vote. Deemed to reject. |
| Class 10 | OLP Partnership Interests | *Impaired*. | Not entitled to vote. Deemed to reject. |
| Class 11 | Operating Subsidiary Interests | *Unimpaired*. | Not entitled to vote. Deemed to accept. |
| Class 12 | Securities Litigation Claims | *Impaired*. | Not entitled to vote. Deemed to reject. |
| Class 13 | SYN Loan Claims | *Impaired*. | Not entitled to vote. Deemed to reject. |

**4.2  Class 1 — Unsecured Priority Non-Tax Claims**.

(a)  **Classification:**  Class 1 consists of Allowed Claims against any of the Debtors entitled to priority status pursuant to section 507(a) of the Bankruptcy Code other than Allowed Administrative Claims and Allowed Priority Tax Claims.

(b)  **Treatment:**  On the later of the Effective Date and the date on which such Claim in Class 1 is Allowed, or, in each case, as soon thereafter as practicable, each Allowed Claim in Class 1 shall be paid in Cash, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, and thereby rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, except to the extent that the Debtors and any Holder of such Allowed Claim agree to a different treatment.

(c)  **Voting:**  Class 1 is Impaired and Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

**4.3  Class 2 — Convenience Claims**.

(a)  **Classification:**  Class 2 consists of all Allowed General Unsecured Claims against the OLP and the Operating Subsidiaries that otherwise would be included in Class 6 or Class 8, but with respect to each such Claim, the applicable Claim either (a) is equal to or less than $3,000.00 or (b) is reduced to $3,000.00, in full settlement of such claim, pursuant to an election by such Holder made on the Ballot (which election shall include

granting the applicable releases described in 11.4 of the Plan) by the applicable voting deadline as specified in the Disclosure Statement

(b) **Treatment:** On the later of the Effective Date and the date on which such Claim in Class 2 is Allowed, or, in each case, as soon thereafter as practicable, each Allowed Claim in Class 2 shall be paid in Cash, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, and thereby rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, except to the extent that the Debtors and any Holder of such Allowed Claim agree to a different treatment; multiple Claims of a Holder against a particular Debtor arising in a series of similar or related transactions between such Debtor and the original Holder of such Claims will be treated as a single Claim and no splitting of Claims will be recognized for purposes of distribution.

(c) **Voting:** Class 2 is Impaired and Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

**4.4  Class 3 — Secured OLP Claims**.

(a) **Classification:** Class 3 consists of all Allowed Claims against any of the Debtors or arising from or related to the Allowed OLP Note Claims together with the OLP Secured Credit Facility Claims.  The OLP Note Claims shall be Allowed and the Claims of NorthWestern pursuant to the OLP Secured Credit facility are Disputed and subject to setoff and equitable subordination.  As a result, no distribution will be made on account of the NorthWestern Claims unless and until such Claims become Allowed.

(b) **Treatment:** On the later of the Effective Date and the date on which such Claim in Class 3 is Allowed, or, in each case, as soon thereafter as practicable, each Allowed Claim in Class 3 shall receive its Pro Rata Share of (a) New Cornerstone Term Loan B Bank Debt, and (b) 100% of the New HLP Units (subject to dilution as part of the Management Incentive Plan).

(c) **Voting:** Class 3 is Impaired and Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

**4.5  Class 4 — Secured Seller Note Claims**.

(a) **Classification:** Class 4 consists of all Allowed Secured Seller Note Claims against any of the Debtors.

(b) **Treatment:** On the later of the Effective Date and the date on which such Claim in Class 4 is Allowed, or, in each case, as soon thereafter as practicable, each Holder of an Allowed Claim in Class 4 will have its claim reinstated to the extent of the value of the Collateral securing such Claim according to the terms of the instrument, or on such other terms as Cornerstone and such Holder agree.

(c) **Voting:** Class 4 is Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in Class 4 are conclusively deemed to have accepted the Plan.  Therefore, the Holders of Claims in Class 4 are not entitled to vote to accept or reject the Plan.

**4.6  Class 5 — Miscellaneous Secured Claims**.

(a) **Classification:** Class 5 consists of all Secured Claims against the Debtors other than Secured OLP Claims and Secured Seller Note Claims.

(b) **Treatment:** On the later of the Effective Date and the date on which such Claim in Class 5 is Allowed, or, in each case, as soon thereafter as practicable, each Holder of an Allowed Claim in Class 5 will have its claim reinstated to the extent of the value of the Collateral securing such Claim according to the terms of the instrument, or on such other terms as Cornerstone and such Holder agree.

(c) **Voting:** Class 5 is Unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in Class 5 are conclusively deemed to have accepted the Plan. Therefore, the Holders of Claims in Class 5 are not entitled to vote to accept or reject the Plan.

**4.7 Class 6 —OLP Unsecured Claims**.

(a) **Classification:** Class 6 consists of unsecured Claims against OLP not included in any other Class.

(b) **Treatment:** If Class 6 votes to accept the Plan, each Holder of an Allowed Claim in Class 6 will receive the lesser of (a) the full Allowed amount of its Claim and (b) its Pro Rata Share (calculated on the aggregate amount of the Allowed Claims in Classes 6 and 8) of $3,000,000. If Class 6 votes to reject the Plan, the Holders of Claims in Class 6 will receive no distribution hereunder.

(c) **Voting:** Class 6 is impaired and Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

**4.8 Class 7 — MLP Unsecured Claims**.

(a) **Classification:** Class 7 consists of MLP Notes Claims and any other Unsecured Claims against MLP not included in any other Class.

(b) **Treatment:** If Class 7 votes to accept the Plan, each Holder of an Allowed Claim in Class 7 will receive (a) its Pro Rata Share of $1,500,000. If Class 7 votes to reject the Plan, the Holders of Claims in class 7 will receive no distribution hereunder.

(c) **Voting:** Class 7 is impaired and Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

**4.9 Class 8 — Operating Subsidiary Unsecured Claims**.

(a) **Classification:** Class 8 consists of Operating Subsidiary Unsecured Claims.

(b) **Treatment:** If Class 8 votes to accept the Plan, each Holder of an Allowed Claim in Class 10 will receive the lesser of (a) the full Allowed amount of its claim and (b) its Pro Rata Share (calculated on the aggregate amount of the Allowed Claims in Class 6 and 8 of $3,000,000.

(c) **Voting:** Class 8 is impaired and Holders of Allowed Claims in Class 10 are entitled to vote to accept or reject the Plan.

**4.10 Class 9 — MLP Partnership Interests**.

(a) **Classification:** Class 9 consists of MLP Partnership Interests.

(b) **Treatment:** On the Effective Date all MLP Partnership Interests shall be cancelled and discharged and the Holders of Interests in Class 9 shall not receive or retain, any property or interest in property under the Plan on account of such Class 9 Interest.

(c) **Voting:** Class 9 shall receive no distribution under the Plan and, therefore, is conclusively deemed to have rejected the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Holders of Class 9 Interests are not entitled to vote to accept or reject the Plan.

**4.11 Class 10 — OLP Partnership Interests**.

(a) **Classification:** Class 10 consists of OLP Partnership Interests.

-17-

(b) **Treatment:** On the Effective Date all OLP Partnership Interests shall be cancelled and discharged and the Holders of Interests in Class 10 shall not receive or retain, any property or interest in property under the Plan on account of such Class 10 Interest.

(c) **Voting:** Class 10 shall receive no distribution, under the Plan and, therefore, is conclusively deemed to have rejected the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Holders of Class 9 Interests are not entitled to vote to accept or reject the Plan.

**4.12** **Class 11 — Operating Subsidiary Interests**.

(a) **Classification:** Class 11 consists of all Operating Subsidiary Interests.

(b) **Treatment:** On the later of the Effective Date and the date on which such Interest in Class 11 is Allowed, or, in each case, as soon thereafter as practicable, each Holder of an Allowed Class 11 Interest will retain its Interest.

(c) **Voting:** Class 11 in Unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Interests in Class 11 are conclusively deemed to have accepted the Plan. Therefore, the Holders of Claims in Class 11 are not entitled to vote to accept or reject the Plan.

**4.13** **Class 12 Securities Litigation Claims**.

(a) **Classification:** Class 12 consists of OLP Securities Litigation Claims and MLP Securities Litigation Claims.

(b) **Treatment**: On the Effective Date all Securities Litigation Claims shall be cancelled and discharged and Holders of Claims in Class 12 shall not receive or retain any property or interest in property under the Plan on account of such Class 12 Claim. The Plan shall neither impair nor create any right to assert any such claims against any of the Debtors' insurance policies.

(c) **Voting:** Class 12 shall receive no distribution under the Plan and, therefore, is conclusively deemed to have rejected the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Class 12 Claims are not entitled to vote to accept or reject the Plan.

**4.14** **Class 13 — SYN Loan Claims**.

(a) **Classification:** Class 13 consists of SYN Loan Claims.

(b) **Treatment:** On the Effective Date all SYN Loan Claims shall be cancelled and discharged and Holders of Claims in Class 13 shall not receive or retain any property or interest in property under the Plan on account of such Class 13 Claim.

(c) **Voting:** Class 13 shall receive no distribution under the Plan and, therefore, is conclusively deemed to have rejected the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Class 13 Claims are not entitled to vote to accept or reject the Plan.

**4.15** **Special Provision Governing Unimpaired Claims**. Except as otherwise provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to or setoffs or recoupments against such Unimpaired Claims.

# ARTICLE V.

## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1  Voting of Claims and Partnership Interests**.  Each Holder of record as of the Voting Record Date of an Allowed Claim in an Impaired Class of Claims entitled to vote as set forth in Article IV hereof shall be entitled to vote separately to accept or reject the Plan with regard to each Impaired Class of Claims as provided for in the Disclosure Statement Order.  If the Debtors object to a Claim, the Claim becomes a Disputed Claim.  A Disputed Claim is not entitled to vote on the Plan unless the Debtors obtain or the Holder of the Disputed Claim obtains an order of the Bankruptcy Court estimating the amount of the Disputed Claim for voting purposes.  If the Debtors do not object to a Claim prior to the date on which the Disclosure Statement and the Ballot are transmitted to creditors for voting, the Holder of such Claim will be permitted to vote on the Plan in the full amount of the Claim in accordance with Disclosure Statement Order.

**5.2  Procedural Consolidation**.  The Plan is premised upon the procedural consolidation of the Debtors solely for purposes of actions associated with the confirmation and consummation of the Plan, including for purposes of voting, confirmation and distribution, including for purposes of determining whether the requirements of 1129(a)(8) have been satisfied.  The procedural consolidation contemplated by the Plan shall not affect any substantive rights or obligations of any of the creditors.  Except as otherwise set forth herein, the Plan does not contemplate the merger, substantive consolidation, or dissolution of any Debtor or the transfer or commingling of any asset of any Debtor.

**5.3  Elimination of Vacant Classes**.  Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**5.4  Nonconsensual Confirmation**.  If any Impaired Class of Claims or Partnership Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors, subject to the terms of the Plan Support Agreement and in consultation with the OLP Notes Committee reserve the right to amend the Plan in accordance with Section 1127 hereof or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.

**5.5  Impairment Controversies**.  If a Controversy arises as to whether any Claim or Partnership Interest, or any Class of Claims or Class of Partnership Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such Controversy.

**5.6  Acceptance by Impaired Classes**.  An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1  Continued Partnership Existence and Vesting of Assets in the Reorganized Debtors**.  Except as otherwise provided in one of the Plan Supplement Documents, each of the Debtors shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal Entity, with all powers of a corporation, limited liability company, joint venture, or partnership, as applicable, under the laws of their respective states of incorporation, formation, or organization, and without prejudice to any right to alter or terminate such existence (whether by merger, acquisition, or otherwise) under such applicable State law.  Except as otherwise provided in the Plan or any Plan Document, on and after the Effective Date, all property of the Estates, and any property acquired by the Debtors or the Reorganized Debtors under the Plan, shall vest in the Reorganized Debtors, free and clear of all

-19-

Claims, liens, charges, or other encumbrances. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims or Partnership Interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**6.2 Restructuring Transactions**. On the Effective Date, and pursuant to the applicable Plan Supplement documents, the applicable Debtors or Reorganized Debtors shall enter into the Restructuring Transactions and shall take any actions as may be necessary or appropriate to effect a restructuring of their respective businesses or the overall organizational structure of the Reorganized Debtors, as and to the extent provided therein. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate, in each case as and to the extent provided in the Restructuring Transaction Agreement. The actions to effect the Restructuring Transactions may include, in each case as and to the extent provided in the Restructuring Transaction Agreement: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

**6.3 Cancellation of Existing Securities and Agreements**. Except as otherwise provided herein, on the Effective Date, the Debtor's obligations under the promissory notes, bonds, instruments, certificates, agreements, debentures and all other debt instruments evidencing any Claim, including Administrative Claims, other than those that are reinstated and rendered unimpaired or renewed and extended pursuant to Article IV hereof, or renewed and remain outstanding pursuant to Article IV hereof, respectively, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors under the agreements and indentures governing such Claims, as the case may be, shall be discharged. Except as otherwise provided herein, the Partnership Interests and Interests shall be cancelled. Holders of promissory notes, bonds, debentures and any and all other debt instruments evidencing any Claim shall not be required to surrender such instruments.

**6.4 Issuance of New Securities; Execution of Plan Documents**. On the Effective Date, (i) the Reorganized Debtors shall issue all securities, notes, instruments, certificates, and other documents of the Reorganized Debtors required to be issued pursuant to the Plan, including, without limitation, the New Cornerstone Term Loan B Bank Debt, the New GP Units, New OLP Partnership Interests and the New HLP Units, each of which shall be distributed as provided in the Plan and (ii) the Reorganized Debtors and the other parties thereto shall execute and deliver the Plan Documents.

**6.5 Effectuating Documents and Further Transactions**. Each of the Debtors or the Reorganized Debtors, as appropriate, is authorized to execute, deliver, amend, file or record such contracts, instruments, releases and other agreements or documents, including Plan Documents, and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

**6.6 Corporate Governance, Directors and Officers, and Partnership Action**.

(a) **New Certificates of Limited Partnership and New By-laws.** On or immediately prior to the Effective Date, each of the Reorganized OLP and the New HLP will file its New Certificate of Limited Partnership with the Secretary of State of its respective state in accordance with the relevant sections of the partnership laws of such state. After the Effective Date, the Reorganized OLP and the New HLP may amend and restate their New Certificates of Limited Partnership and other constituent documents as permitted by the laws of the respective states.

-20-

(b) **Directors and Officers of the Reorganized Debtors.** Subject to section 1129(a)(5) of the Bankruptcy Code, the directors and officers of the Debtors shall resign as of the Effective Date. Pursuant to section 1129(a)(5), the Debtors will disclose at the Disclosure Statement Hearing Date or as soon as practicable thereafter prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial boards of directors of the Reorganized Debtors. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Certificates of Limited Partnership and other constituent documents of the Reorganized Debtors. The board of directors of the New GP will consist of the post reorganization CEO, and four (4) individuals, each of which shall be nominated by a New GP Holder.

(c) **Partnership Action.** As of the Effective Date, the adoption and filing of the New Certificates of Limited Partnership, the approval of the New OLP Limited Partnership Agreements, the appointment of directors and officers for the Reorganized Debtors, and all actions contemplated hereby shall be deemed to be authorized and approved in all respects (subject to the provisions hereof). All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, and any Partnership action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, pursuant to applicable law, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

(d) **Compensation and Benefit Programs**.

(i) Except or to the extent previously assumed or rejected by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and benefit programs of the Debtors as amended or modified, including programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed except executory contracts or plans as have previously been rejected, are the subject of a motion to reject or have been specifically waived by the beneficiaries of any plans or contracts; provided, however, that the Debtors may pay all retiree benefits as described in section 1114 of the Bankruptcy Code.

(ii) On the Effective Date, Reorganized Debtors will adopt employment arrangements for its officers and executive employees, the general terms of which shall be set forth in the Plan Supplement. On the Effective Date, management and designated employees of Reorganized Debtors and the other Reorganized Debtors shall receive the benefits provided under such arrangements on the terms and conditions provided therein. At this time the terms and conditions of the Management Incentive Plan have not been determined. The adoption and implementation of any Management Incentive Plan will be subject to the review and approval of the Board of Directors of the Reorganized Debtors.

**6.7 Exit Facility**. On the Effective Date, the Reorganized OLP will enter into the Exit Facility Agreement, which will be used to fund future Working Capital requirements, acquisitions and other general Corporate purposes as provided in the Exit Facility Agreement.

**6.8 Issuance of New GP Membership Interests**. On the Effective Date 100% of the New GP Membership Interests shall be distributed to the New GP Holders in exchange for the New GP Holders Investment pursuant to the New GP Holders Investment Agreement.

**6.9 Cancellation of OLP Partnership Interests; Reorganized OLP**. On the Effective Date, the existing OLP Partnership Interests shall be cancelled, the OLP shall be converted to a limited liability Company, and the Reorganized OLP shall become a wholly-owned subsidiary of the New HLP, which shall be the sole member of the Reorganized OLP. shall be reorganized as a wholly-owned subsidiary of the New HLP.

**6.10** **Sources of Cash for Plan Distribution**.  Unless otherwise specified herein, all Cash necessary for the Reorganized Debtors to make payments pursuant hereto shall be obtained from existing Cash balances, if any, or the proceeds of the Exit Facility as determined by the New GP.

**6.11** **Additional Entities**.  The Debtors may modify the restructuring transactions set forth in this Article VII in such a manner as they may deem necessary and appropriate in order to effect the internal restructuring set forth in the Plan, including (a) forming additional special purpose affiliates or subsidiaries of the Reorganized Debtors and (b) transferring certain assets of the Debtors to the entities formed pursuant to this Section 6.11.

**6.12** **Transfer of Assets of the MLP to New HLP**.  On the Effective Date, all assets of the MLP shall be deemed to be transferred to and shall vest in the New HLP, and the Reorganized OLP free and clear of all claims, security interests, and encumbrances, and the Reorganized OLP shall succeed to all such assets and rights associated therewith.

**ARTICLE VII.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

**7.1**  **Assumption, Assignment or Rejection of Executory Contracts and Unexpired Leases**.

(a)  **Assumption of Executory Contracts and Unexpired Leases**.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between or among the Debtors and any Person or Governmental Entity shall be deemed assumed by the Debtors as of the Effective Date, except that any executory contract or unexpired lease shall be deemed rejected by the Debtors as of the Effective Date (i) that has been rejected pursuant to a Final Order entered prior to the Confirmation Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date that results in a Final Order or (iii) that is set forth in Exhibit A to the Plan Supplement; provided, however, that (1) the Debtors reserve the right, on or prior to the conclusion of the confirmation hearing, to amend the Plan Supplement so as to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed by the Debtors or rejected, as the case may be, as of the Effective Date.  The Debtors will give notice of any such amendment to each counterparty to any executory contract the status of which is changed as a result of the amendment (i.e., any executory contract which is to be assumed, rejected or assumed and assigned as a result of the amendment).  In the event that the counterparty opposes such proposed amendment, the Debtors will make all reasonable efforts to provide such counterparty a reasonable opportunity under the circumstances to object prior to the Confirmation Date and, to the extent that such counterparty had the right to vote on the Plan, or became entitled to vote on the Plan as a result of any amendments to the Plan, to provide such counterparty a reasonable time to cast a Ballot to accept or reject the Plan, or to amend its Ballot.  The listing of a document in the Plan Supplement shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

(b)  **Assumption and Assignment of Executory Contracts and Unexpired Leases**.  Pursuant to sections 365(f) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases specified in Exhibit B to the Plan Supplement shall be deemed assumed and assigned by the Debtors on the Effective Date to those entities as set forth in such schedules.  The Debtors reserve the right, on or prior to the conclusion of the Confirmation Hearing, to amend the Plan Supplement so as to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) will be treated as set forth on such schedules as of the Effective Date.  Each executory contract and unexpired lease to be assumed or assumed and assigned by the Debtors shall include modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed in the Plan Supplement.

(c)  **Schedules of Rejected Executory Contracts and Unexpired Leases; Inclusiveness**.  Each executory contract and unexpired lease listed or to be listed in the Plan Supplement shall include (i) modifications,

amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed in the Plan Supplement, and (ii) executory contracts or unexpired leases appurtenant to the premises listed in the Plan Supplement, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements or vault, tunnel or bridge agreements, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases, unless any of the foregoing agreements previously have been assumed or assumed and assigned by the Debtors.

(d) **Approval of Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases**.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 7.1(a) of the Plan, (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign or reject the unexpired leases of non-residential property specified in Section 7.1(a) hereof through the date of entry of the Confirmation Order, (c) approval, pursuant to sections 365(f) and 1123(b)(2) of the Bankruptcy Code, of the assignment of the executory contracts and unexpired leases assigned pursuant to Section 7.1(b) and Article VII hereof, and (d) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 7.1(a) hereof.

(e) **Cure of Defaults**.  Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed, or assumed and assigned, by the Debtors pursuant to Sections 7.1(a) and (b) hereof, in accordance with section 365(b)(1) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.

(f) **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 7.1 hereof must be properly filed in the Chapter 11 Case and served upon the Debtors no later than 30 days after the Confirmation Date.  All such Claims not filed within such time shall be forever barred from assertion against the Debtors, its Estates and its property.

(g) **Retiree Benefits**.  Payments, if any, due to any Person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtors prior to the Commencement Date shall be continued for the duration of the period the Debtors have obligated themselves to provide such benefits.

## ARTICLE VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1  Distributions for Claims and Interests Allowed as of the Effective Dates Allocation**.  Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, distributions to be made on account of Claims and Partnership Interests that are Allowed as of the Effective Date shall be made on the Effective Date, or as soon as practicable thereafter.  Unless otherwise specifically provided  for or contemplated in the Plan or Confirmation Order, or required by applicable bankruptcy law, Post-Petition Interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Commencement Date.  For tax purposes, distributions received in respect of Allowed Claims shall be allocated first to the principal amount of the Allowed Claims, second to unpaid interest that accrued on such Claims, and third, with respect to the extent of any unallocated excess, to the Make Whole.

**8.2  Method of Distributions Under the Plan**.

(a)  **Disbursing Agent**.  All distributions under the Plan shall be made by the Debtors as Disbursing Agents or such other Entity designated by the Debtors as Disbursing Agent.  A Disbursing Agent shall not be required to provide any bond, surety or other security for the performance of its duties, unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond, surety or other security shall be borne by the Debtors.

(b)  **Distributions to Holders as of the Distribution Record Date**.

(i)  Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made (A) to the Holder of each Allowed Claim or Partnership Interest at the address of such Holder as listed on the Debtors' Bankruptcy Schedules as of the Distribution Record Date, unless the Debtors have been notified in writing of a change of address, including by the filing of a timely proof of Claim by such Holder that provides an address for such Holder different from the address reflected on the Debtors' Bankruptcy Schedules, or (B) pursuant to the terms of a particular indenture or agreement of the Debtors or in accordance with other written instructions of a trustee under such indenture or agreement.

(ii)  As of the close of business on the Distribution Record Date, the Claims register shall be closed and there shall be no further changes in the record Holder of any Claim or Interest.  The Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any Claim.  The Debtors and the Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes of the Plan with only those record Holders stated on the claims register as of the close of business on the Distribution Record Date.

(c)  **Distributions of Cash**.  Any payment of Cash made by the Debtors pursuant to the Plan shall, at the Debtors' option, be made to the appropriate bank administrative agents, trustees for the Notes or other creditors  for distribution by check drawn on a domestic bank or wire transfer, and shall first be drawn proportionately from the segregated Cash accounts established pursuant to the terms of this Plan before any other Cash sources are used.

(d)  **Timing of Distributions**.  Except as otherwise set forth in the Plan or the Plan Documents, payments and distributions to Holders of Allowed Claims on the Effective Date shall be made pursuant to the timing designated in Sections [___] through [___], or as soon as practicable thereafter.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(e)  **Minimum Distributions**.  No payment of Cash less than one hundred U.S. dollars ($100.00) shall be made by the Debtors to any Holder of a Claim unless a request therefor is made in writing to the Debtors.

(f)  **Unclaimed Distributions**.  All distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and vested in the Reorganized Debtors and any entitlement of any Holder of any Claim or Partnership Interest to such distributions shall be extinguished and forever barred.

**8.3  Compliance with Tax Requirements**.  In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.

**8.4  Setoffs and Recoupments**.  The Debtors or the Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Allowed Claim on which payments are to be made pursuant to the Plan, any claims of any nature whatsoever, the Debtors or the Reorganized Debtors may have against the Holders of such Claim that is not released under Article XI herein and the distributions to be made pursuant hereto on account of such Claim.

**8.5    Fractional Distributions of New HLP Units**.  New HLP Units shall be issued in whole numbers only. Whenever any distribution of New HLP Units in a fractional amount would otherwise be provided for under the Plan, the actual distribution made shall reflect a rounding of the fraction to the nearest whole dollar (up or down) with half dollar by rounded down.

## ARTICLE IX.

## PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR  INTERESTS

**9.1    Resolution of Disputed Claims**.

(a)    **Prosecution of Objections to Claims**.  After the Effective Date and on or before the Claims Objection Deadline, the Reorganized Debtors or their successors shall have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims or Interests.  An objection is deemed to have been timely filed to all Tort Claims and Disputed Claims.  From and after the Effective Date, the Reorganized Debtors or their successors may settle or compromise any Disputed Claim or Partnership Interest without approval of the Bankruptcy Court.

(b)    **Estimation of Claims and Interests**. The Debtors or the Reorganized Debtors, or their successor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Interest pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors or their successor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims or Interests and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims and Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(c)    **Payments and Distributions on Disputed Claims and Interests**. Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Reorganized Debtors in their sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such disputes by settlement or Final Order.  On the date or, if such date is not a Business Day, on the next successive Business Day that is 5 business days after the calendar month in which a Disputed Claim or Interest becomes an Allowed Claim or Allowed Interest, the Holder of such Allowed Claim or Allowed Interest will receive all payments and distributions to which such Holder is then entitled under the Plan.  Notwithstanding the foregoing, any Person or Entity who holds both an Allowed Claim(s) and a Disputed Claim(s) (or an Allowed Interest(s) and a Disputed Interest(s)) will not receive the appropriate payment or distribution on the Allowed Claim(s) (or Allowed Interest(s)), except as otherwise agreed by the Reorganized Debtors in their sole discretion, until the Disputed Claim(s) or Disputed Interest(s) are resolved by settlement or Final Order.

(d)    **Disputed Claims Reserve**.  On the Effective Date (or as soon thereafter as is practicable) the Reorganized Debtors shall establish the Disputed Claims Reserve and shall reserve in respect of each Disputed Claim an amount of Cash, New Cornerstone Term Loan B Bank Debt and New HLP Units, as applicable, that would have been distributed to the Holder of such Disputed Claim if such Disputed Claim had been an Allowed Claim on the Effective Date in an amount equal to the least of (i) the amount of the Claim filed with the Bankruptcy Court, or, if no amount was specified, an amount determined by the Debtors, (ii) if no Claim was filed, the amount listed by the Debtors in the Schedules as not disputed, contingent or unliquidated, or (iii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.  The Reorganized Debtors shall also reserve in respect of such Disputed Claim any and all interest payments and other payments and distributions that would actually have been paid or made after the Effective Date to the Holder thereof on account of the New Cornerstone

-25-

Term Loan B Bank Debt and Partnership Units that would have been issued to such Holder had the Disputed Claim of such Holder been an Allowed Claim on the Effective Date. Any Cash reserved by the Reorganized Debtors on account of Disputed Claims shall be set aside, segregated and held in interest-bearing accounts or certificates of deposit. Notwithstanding anything to the contrary contained herein, the amount of Cash (including interest actually earned thereon), New Cornerstone Term Loan B Bank Debt and New HLP Units (plus interest payments and other payments and distributions in respect thereof and any interest actually earned thereon), as applicable, reserved in respect of any Disputed Claim pursuant to this Section 9.1(d) shall constitute the maximum amount of Cash and New Cornerstone Term Loan B Bank Debt and New HLP Units, as applicable, to be distributed to the Holder of such Disputed Claim.

(e) **Distributions After Allowance**. Subject to Section [____] herein, the Reorganized Debtors shall distribute from the Disputed Claims Reserve to the Holder of any Disputed Claim that has become an Allowed Claim, no later than the fifth business day after the end of the calendar month in which such Disputed Claim becomes an Allowed Claim, Cash plus any interest actually earned on such Cash, and New Cornerstone Term Loan B Bank Debt and New HLP Units, as applicable plus any interest payments or other payments or distributions that should have been reserved in respect of such New Cornerstone Term Loan B Bank Debt and New HLP Units and any interest actually earned on any such payments or distribution, in amounts equal to the Cash and New Cornerstone Term Loan B Bank Debt and New HLP Units, as applicable, that such Holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date. Notwithstanding anything to the contrary contained herein, the amount of Cash (including interest actually earned thereon), New Cornerstone Term Loan B Bank Debt and New HLP Units (plus interest payments and other payments and distributions in respect thereof and any interest actually earned thereon), as applicable, reserved in respect of any Disputed Claim pursuant to Section [____] shall constitute the maximum amount of Cash, New Cornerstone Term Loan B Bank Debt and New HLP Units, as applicable, to be distributed to the Holder of such Disputed Claim.

(f) **Distributions After Disallowance**. Except as otherwise provided herein, if a Disputed Claim is disallowed, in whole or in part, the Reorganized Debtors shall, on a semi-annual basis, redistribute to the Holders of Allowed Claims in the applicable Classes, each such Holder's Pro Rata share of the Cash (including interest actually earned thereon), New Cornerstone Term Loan B Bank Debt and New HLP Units (plus interest payments and other payments and distributions in respect thereof and any interest actually earned thereon), as applicable, reserved in respect of such disallowed Disputed Claim.

**9.2 Allowance of Claims and Interests**. Except as expressly provided herein or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall be deemed Allowed, unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Interest. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors after confirmation will have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest as of the date Debtors filed their petitions for relief under the Bankruptcy Code. All Claims of any Person or Entity that owes money to the Debtors shall be disallowed unless and until such Person or Entity pays the amount it owes the Debtors in full.

## ARTICLE X.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE
## AND CONSUMMATION OF THE PLAN

**10.1 Conditions Precedent to the Effective Date**. The Effective Date will not occur and the Plan will not be consummated unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 10.2 herein:

(a) The Confirmation Order shall have been entered and shall:

(i) authorize and direct the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan;

(ii)     decree that the provisions of the Confirmation Order are nonseverable and mutually dependent;

(iii)    authorize the Reorganized Debtors to (a) issue the New Cornerstone Term Loan B Bank Debt, the New GP Interest, the Reorganized OLP Partnership Interests, and the New HLP Units and (b) enter into the Plan Documents;

(iv)     approve the releases contemplated herein;

(v)      decree that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(vi)     authorize the implementation of the Plan in accordance with its terms; and

(vii)    provide that pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition or transfer of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax (including, without limitation, any mortgages or security interest filing to be recorded or filed in connection with the Exit Facility and the New Cornerstone Term B Loan Bank Debt).

(b)    The following agreements, in form and substance satisfactory to the Reorganized Debtors and the Creditors Committee, shall have been executed, delivered, filed and adopted, as appropriate, and all conditions precedent thereto shall have been satisfied:

(i)      the New Certificate of Incorporation or New Certificate of Limited Partnership of each of the Reorganized Debtors;

(ii)     the New By-laws of each of the Reorganized Debtors, to the extent applicable;

(iii)    the New OLP Limited Partnership Agreement, the New HLP Limited Partnership Agreement and the New GP LLC Agreement; and

(iv)     each of the other Plan Documents.

(c)    Each New Certificate of Incorporation or New Certificate of Limited Partnership shall have been filed with the Secretary of its respective state of the incorporation.

(d)    All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

(e)    The initial boards of directors of the Reorganized Debtors shall have been appointed.

(f)    The Debtors shall have received a binding commitment for the Exit Facility, which commitment shall be in form and substance and with a lender reasonably acceptable to the Debtors.

(g)    The Restructuring Transactions shall have been consummated.

10.2 **Waiver of Conditions**.  The Debtors may waive any of the conditions to Confirmation of the Plan and/or to Consummation of the Plan set forth in this Article XI at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Plan with the consent of the OLP Notes Committee as provided in the Plan Support Agreement.

**10.3** __Effect of Non-occurrence of Conditions to Consummation__.  If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against, or any Partnership Interests or Interest in, the Debtors; (2) prejudice in any manner the rights of the Debtors or any creditors or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any creditors in any respect.

## ARTICLE XI.

## EFFECT OF PLAN CONFIRMATION

**11.1** __Binding Effect__.  The Plan shall be binding upon and inure to the  benefit of the Debtors and the Reorganized Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, all parties-in-interest in these Chapter 11 Cases, including Professionals.

**11.2** __Subordination__.  The classification and manner of satisfying all Claims, Partnership Interests and Interests under the Plan and the respective distributions and treatments under the Plan take into consideration all subordination rights, if any, arising by contract or general principles of equitable subordination, sections 510(a), 510(b) or 510(c) of the Bankruptcy Code or otherwise.  All subordination rights that a Holder of a Claim, Partnership Interest or Interest may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined.

**11.3** __Releases by the Debtors__.  Except as provided in Section 11.10, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and the Reorganized Debtors in their individual capacities and as debtors in possession, the Debtors' estates, and any of their other direct or indirect subsidiaries on their own behalf and on behalf of all of Holders of Partnership Interests, stockholders and creditors, derivatively (i.e., to the extent that claims of or liabilities to the holders of Partnership Interests, stockholders and creditors are property of the Debtors or their estates, or the Debtors or their estates otherwise have standing to assert such claims or liabilities) (collectively, the "Releasing Parties") shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights of the Debtors or the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered hereunder) (i) the current representatives, directors, officers and employees of the Debtors (other than for money borrowed from or owed to the Debtors by any such representatives, directors, officers or employees as set forth in the Debtors' books and records) and the Debtors' agents and Professionals, in each case in their capacity as such, and (ii) the respective affiliates and current representatives, officers, directors, employees, agents, members, direct and indirect shareholders, advisors, and professionals of the foregoing, in each case in their capacity as such, and (iii) the holders of OLP Notes, the OLP Notes Committee, the current and former members of the OLP Notes Committee, and to the extent acting for the OLP Notes Committee or one of its members, as the case may be, all of the OLP Notes Committee's and its members' respective direct and indirect subsidiaries, stockholders, directors, officers, employees, agents, representatives, financial advisors, professionals, accountants and attorneys and all of their predecessors, successors and assigns, solely in such capacities (all of the foregoing, collectively, the "Released Parties"), from any and all claims and liabilities of every nature and kind (including, but not limited to, any avoidance or recovery actions under chapter 5 of the Bankruptcy Code) against them that the Releasing Parties have, may have, or are deemed to have, which are property of the Debtors or their estates or which the Debtors or their estates otherwise have standing to assert, which are in any way related to or arising out of, in law or equity, based on or in any way connected with in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation Plan and subsequent distributions thereunder, or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or the Reorganized Debtors, including, without limitation, (a) the negotiation, formulation, preparation, administration, execution, and enforcement of the OLP Notes, and any payments received thereunder, (b) any guaranty arising under the OLP Notes, (c) any liens, pledges, or collateral of any kind related to the OLP Notes, (d) that certain Amended and Restated Security Agreement dated July 2, 2003, (e) that certain Second Amendment and Override to Intercreditor and Trust Agreement dated July 2, 2003, (f) any documents included with the Plan Supplement, and the Cash Collateral Order (including any terms, settlements, and compromises reflected in any of the foregoing).  Holders of any claim or

interest against the Debtors or their non-Debtor affiliates shall be enjoined from commencing or continuing, any action against any party released under this section 11.3, any action, employment of process, or act to collect, offset, recover, or avoid any such claim or interest that could be brought on behalf of or in the name of the Debtors or their non-Debtor affiliates to the extent released under this section 11.3.

**11.4 Releases by Holders of Claims and Interests**.  Except as provided in Section 11.10, on the Effective Date, each Holder of a Claim, Partnership Interest, or Interest that votes to accept the Plan and does not check the appropriate box on its Ballot to opt out of the release, will be deemed to forever release, waive and discharge all Claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the Debtors' or the Reorganized Debtors' obligations under the Plan, and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement against (a) the current representatives, directors, officers and employees of the Debtors (other than Claims or Interests unrelated to the Debtors) and the Debtors' agents and Professionals, in each case in their capacity as such; (b) the Holders of the OLP Note Claims, the OLP Notes Committee and its current and former members, and the OLP Collateral Trustee and (c) the respective affiliates and current representatives, officers, directors, employees, agents, members, direct and indirect shareholders, advisors, and professionals of the foregoing in each in their capacity as such Note Claims and the OLP Collateral Trustee and (d) the respective affiliates and current representatives, officers, directors, employees, agents, members, direct and indirect shareholders, advisors, and professionals of the foregoing, in each case in their capacity as such.

**11.5 Exculpation and Limitation of Liability**.  Except as provided in Section 11.10, and except as provided in the Plan or the Confirmation Order, neither the Debtors, the OLP Notes Trustee, the Creditors Committee, the OLP Notes Committee nor the individual members thereof, nor any of their respective present members, representatives, officers, directors, shareholders, employees, advisors, attorneys or agents acting in such capacity, shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim, Partnership Interest, or Interest, or any other party in interest, or any of their respective agents, direct or indirect shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**11.6 Survival of Indemnification Obligations**.  Except as otherwise provided herein, the obligations of the Debtors to indemnify their present directors, officers, partners, shareholders, affiliates, agents employees and representatives pursuant to their respective present or past partnership agreements, certificates of incorporation, by-laws, contractual obligations, or any applicable laws in respect of all past, present and future actions, suits and proceedings against any of such directors, officers, agents, employees and representatives based upon any act or omission related to service with, for, or on behalf of the Debtors will be discharged and extinguished by confirmation of the Plan.  And to the extent such director, officer, agent, employee and representative have filed a timely proof of claim, and such Claim has been Allowed, such Claims shall receive the treatment provided for such Claims under the Plan.  Notwithstanding the foregoing the Debtors and Reorganized Debtors shall remain liable with respect to the Deductible Obligations in an aggregate amount not to exceed $150,000.  In addition the Debtors and Reorganized Debtors shall remain liable with respect to the E&S Indemnifications which shall be assumed by the Debtors.

**11.7 Discharge of Claims and Termination of Interests**.  Except as provided in Section 11.10, and except as provided in the Plan or the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, (i) the rights afforded under the Plan and the treatment of all Claims and Interests herein, shall be in exchange for and in complete satisfaction, discharge and release of Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Commencement Date, against any Debtor or any of its assets or properties, (ii) on the Effective Date, all such Claims against, and Interests in, any Debtor shall be satisfied, discharged and released in full and (iii) all Persons and Entities shall be precluded from asserting against the Reorganized Debtors, their successors

or their assets or properties any other or further Claims, Partnership Interest, or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

**11.8** **Term of Bankruptcy Injunction or Stays**.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case under section 105 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date shall remain in full force and effect in accordance with the terms of such injunctions.  Unless otherwise provided, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

**11.9** **Injunction**.  Except as provided in Section 11.10, in addition to and except as otherwise expressly provided herein, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Interests in the Debtors, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors, or their respective subsidiaries or affiliates on account of any such Claim or Interest; (iii) creating, perfecting or enforcing any Lien of any kind against the Reorganized Debtors, or their respective subsidiaries or affiliates or against the property or interests in property of the Reorganized Debtors, or their respective subsidiaries or affiliates on account of any such Claim, Partnership Interest, or Interest; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors, or their respective subsidiaries or affiliates or against the property or interests in property of the Reorganized Debtors, or their respective subsidiaries or affiliates on account of any such Claim or Interest; and (v) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims or Causes of Action which are extinguished, dismissed or released pursuant to the Plan.  The injunction shall also enjoin all parties in interest, including all entities who have held, hold or may hold Claims against or Interests in the Debtors, from taking any action in violation of the Confirmation Order.  Such injunction shall extend to successors of the Reorganized Debtors, or their respective subsidiaries or affiliates, their respective properties and interests in property.

By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest will be deemed to have specifically consented to the injunctions set forth in this Article.

**11.10** **No Release, Discharge, Injunction as to NorthWestern**.  Notwithstanding any provisions to the contrary set forth in this Plan, nothing herein shall be deemed to release, discharge or otherwise affect the Debtors', Reorganized Debtors', or any Creditors' rights to assert Claims or Causes of Action against NorthWestern any current or future officer or director of the Debtors that is or was an officer, director, agent, or employee of NorthWestern.

## ARTICLE XII.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, including jurisdiction to:

(a)  allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)  grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)  resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters

related to the amendment after the Effective Date pursuant to Article VIII herein to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(d)  resolve any disputes between the Reorganized Debtors and the Creditors Committee regarding the allowance, settlement or compromise of Disputed Claims;

(e)  ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions hereof;

(f)  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(g)  enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(h)  resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan;

(i)  issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

(j)  resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article XI hereof and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

(k)  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)  to hear and determine matters concerning state, local and federal taxes, in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(m) determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(n)  hear and determine all applications for compensation and reimbursement of expenses and Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(o)  enter an order and/or final decree concluding the Chapter 11 Cases; and

(p)  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.

## MISCELLANEOUS PROVIS IONS

**13.1 Effectuating Documents, Further Transactions and Partnership Actions**.  Each Debtor and Reorganized Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof and the notes and securities issued pursuant hereto.  On or after the Effective Date (as appropriate), all matters provided for hereunder that would otherwise require approval of the shareholders, unit Holders or directors of the Debtors or the Reorganized Debtors shall be deemed to have occurred

and shall be in effect, on or after the Effective Date (as appropriate) pursuant to the applicable limited partnership or corporation law of such Debtor's state of partnership or incorporation without any requirement of further action by the shareholders, unit Holders or directors of such Debtor or Reorganized Debtor.

13.2 **Dissolution of Creditors Committee**.  Upon the entry of an order or final decree concluding the Chapter 11 Cases, the Creditors Committee shall dissolve and members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

13.3 **Payment of Statutory Fees**.  All fees payable pursuant to section 1930(a) of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

13.4 **Modification of Plan**.  Subject to the limitations contained in the Plan, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order and (ii) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

13.5 **Revocation of Plan**.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Partnership Interest or Class of Claims or Partnership Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Partnership Interests in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by such Debtor or any other Person.

13.6 **Successors and Assigns**.  The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

13.7 **Reservation of Rights**.  Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall occur.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Partnership Interests prior to the Effective Date.

13.8 **Section 1145 Exemption**.  Pursuant to section 1145(a) of the Bankruptcy Code, any securities offered or sold under the Plan are exempt from any registration requirements under federal, state or local law.

13.9 **Section 1146 Exemption**.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

13.10  **Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, the provisions of the Plan shall govern, and in the event of any inconsistency between the Plan and any Plan Document, the provisions of such Plan Document shall govern.

**13.11    Governing Law.** Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of the Plan Documents and any other contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**13.12    Further Assurances.** The Debtors, the Reorganized Debtors and all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**13.13    Injunction Related to Releases and Exculpation.** Except as otherwise set forth in the Plan, the confirmation order shall permanently enjoin the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or subject to exculpation pursuant to the terms of this Plan.

**13.14    Service of Documents.** Any pleading, notice or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be sent by first class U.S. mail, postage prepaid to:

Cornerstone

Everett & Solsvig, Inc.
10 Rockefeller Plaza
Suite 815
New York, NY 10020
Attn: Curtis G. Solsvig, III

with copies to:

Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Attn:    Michael A. Cohen, Esq.

**13.15    Filing of Additional Documents.** On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**13.16    Plan Supplement.** The Plan Supplement, which shall include certain exhibits, lists, schedules, supplements, or other documents to be executed in connection with the Plan (as shall be agreed to by the Debtors and the OLP Notes Committee) and may be amended from time to time, shall be filed with the Bankruptcy Court not later than ten (10) days before the Confirmation Hearing. Upon its filing, the Plan Supplement may be inspected in the offices of the Clerk or such Clerk's designee during normal business hours. The documents contained in the Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

Respectfully Submitted,

By: /s/ Leonard H. York
    Name: Leonard H. York
    Title: Chief Financial Officer